UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STUART FINFER,<br><br>Plaintiff,<br>v.<br><br>CITY OF RENO, a political subdivision including its department Reno Municipal Court,<br><br>Defendants. | Case No. 3:16-cv-00641-MMD-VPC<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – ECF No. 10) |

**I.   SUMMARY**

This case asserts violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). Before the Court is Defendant City of Reno's Motion to Dismiss. (ECF No. 10.) The Court has reviewed Plaintiff Stuart Finfer's response (ECF No. 17) and Defendant's reply (ECF No. 21.) For the reasons discussed below, the Motion is granted and the case is dismissed. Plaintiff's motion for preliminary injunction (ECF No. 27) is denied as moot.

**II.   BACKGROUND**

The following facts are taken from Finfer's Complaint. Stuart Finfer is an alcohol and drug addiction counselor licensed by the Nevada State Board of Examiners for Alcohol, Drug, and Gambling ("the Nevada Board"). (ECF No. 1 ¶ 10.) He runs a business called Ability Counseling, and has treated patients in the Reno area since 2003. (*Id.*) Some of Ability Counseling's clients come to receive court mandated substance abuse counseling. (*Id.* ¶ 21.) Finfer has dealt with serious health issues since

a young age, and underwent a series of seven surgeries between 2010 and 2013. (*Id.* ¶¶ 13, 14.) During his surgeries and rehabilitation, Finfer's staff handled any alcohol and drug related cases referred to Ability Counseling. (*Id.* ¶ 14.) After the surgeries, Finfer uses a motorized wheelchair and walker, but is capable of performing the tasks necessary to counsel his clients. (*Id.* ¶¶ 18-20.)

In early 2014, Finfer learned, through an attorney with whom he had worked in the past, that at least one judge at the Reno Municipal Court ("RMC") no longer considered Ability Counseling to be an appropriate agency to fulfill mandatory counseling requirements imposed as part of DUI sentences. (*Id.* ¶ 22.) Finfer, through an attorney, contacted the Nevada Board and, after some back and forth, confirmed that he was certified and his license was in good standing, and further that no disciplinary action had been taken against him in the past three years. (*Id.* ¶¶ 25-28.)

Finfer contacted RMC to find out why he had been removed from the list of approved providers. A court employee informed Finfer that his intern license had expired. (*Id.* ¶ 30.) Finfer informed that employee that, while he was unable to sit for final licensing exam due to his surgeries, he still held a provisional license, which enabled him to practice. (*Id.* ¶¶ 30, 31.) Ability Counseling was placed back on RMC's list of approved providers to receive referrals from the court. (*Id.* ¶ 34.)

In February 2015, Finfer and Ability Counseling were once again removed from RMC's list of approved providers. (*Id.* ¶¶ 35, 36.) Finfer contacted the court to inquire why he had been removed again, but he was not given a reason. (*Id.* ¶ 39.) At least two of Finfer's clients have been told by RMC judges that they would not receive any credit for counseling sessions with Finfer or Ability Counseling. (*Id.* ¶ 40.) Finfer has never been given a reason for RMC's decision. (*Id.* 46.)

Finfer alleges that RMC removed him from its list of approved providers due to his disability, perception of disability, and history of disability. (*Id.* ¶ 43.) He alleges that doing so makes the City of Reno liable for violations of the ADA, the Rehabilitation Act, and international interferences with prospective economic advantage.

Defendant moves for dismissal on several grounds. First, it argues that the decision about which providers to approve is a sentencing decision protected by judicial immunity. Second, it argues that the City cannot be liable for the actions of the judicial branch, over which it cannot exercise control. Third, it argues that the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971) and *O'Shea v. Littleton*, 414 U.S. 488 (1974) apply. And finally, Defendant argues that beyond any abstention or immunity problems, Finfer has failed to plead plausible violations of the ADA and Rehabilitation Act. (ECF No. 10 at 4-16.)

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the

defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

## IV. DISCUSSION

Finfer seeks injunctive relief (specifically an order placing him back on RMC's list of approved providers), damages, fees and costs. (ECF No. 1 at 15.) Finfer's request for injunctive relief is precluded by the abstention doctrines discussed in *Younger* and *O'Shea*. His request for damages is precluded by the doctrine of judicial immunity. While Finfer may ultimately be entitled to some type of legal or administrative remedy, his path to relief does not run through federal court.

### A. Abstention

Defendants argue that the injunctive relief sought by Finfer would require the type of supervisory enforcement that the Supreme Court has expressly and repeatedly found to offend the principals of federalism. Finfer does not respond to this argument.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court recognized the need for federal courts to avoid interference with state criminal proceedings in most circumstances. In *O'Shea v. Littleton*, 414 U.S. 488 (1974), the Supreme Court expanded upon this principle and concluded that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials" amounted to an "ongoing federal audit" and was impermissible under *Younger. Id.* at 500. The Court later applied the doctrine to civil litigation where important state government interests are at stake. *See Juidice v. Vail*, 430 U.S. 327, 335

(1977) (applying *Younger* abstention where intervention would target "administration of the State's judicial system."); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (reasoning also applies to "enforcing orders and judgment of [state] courts."); s*ee also Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015) (quoting *L.A. Cty. Bar Ass'n v. Eu (LACBA)*, 979 F.2d 697, 703 (9th Cir. 1992)) ("[W]hen 'principles of federalism, comity, and institutional competence' are implicated, a federal court 'should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system.'").

This case is somewhat unique in that the plaintiff is not a party to any ongoing or threatened state court litigation, but instead a third-party whose business relies on his relationship with RMC. Still, as Defendant argues, granting Finfer's requested relief would involve ongoing federal court monitoring of state court sentencing practices. Even assuming the named defendant — the City of Reno — would have the legal authority to control the sentencing practices of RMC, any future changes in sentencing practices generally, or Finfer's services specifically, would invite further intervention from this Court. This is exactly the type of situation *Younger* abstention, as refined and expanded by both the Supreme Court and the Ninth Circuit, seeks to avoid.

For these reasons, the Court agrees with Defendant that *Younger* and its progeny preclude the Court from granting the injunctive relief sought by Finfer.

### B. Judicial Immunity

Defendant argues that acts allegedly giving rise to liability are judicial decisions and are therefore protected by the doctrine of judicial immunity. Finfer responds that his suit does not name any specific judges, and that the behavior he identifies is administrative and therefore beyond the reach of judicial immunity. Finfer characterizes RMC's behavior as "the blanket exclusion of a contractor," which he contends is akin to the types of administrative or personnel decisions that courts have found outside of the scope of the immunity doctrine. (ECF No. 17 at 15.)

///

It is well established that judges who perform judicial functions are immune from suit. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). In *Mireles*, the United States Supreme Court explained the rationale for giving judicial officers absolute immunity:

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872)). Immunity does not extend, however to "nonjudicial actions" such as actions a judge takes in an administrative context. *Forrester v. White*, 484 U.S. 219, 229 (1988) (firing a subordinate). Immunity also does not extend to actions taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 12.

In order to determine whether a judge acted in a judicial context, and is therefore entitled to immunity, a court must consider the nature of the function performed, rather than the identity of the person who performed it. *Forrester*, 484 U.S. at 229. The Ninth Circuit has instructed courts to look at the following factors to determine whether an act is judicial in nature: 1) the precise act is a normal judicial function; 2) the events occurred in the judge's chambers; 3) the controversy centered around a case then pending before the judge; and 4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. *Meek v. Cty. of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999).

Finfer urges the Court to adopt the reasoning laid out by the U.S. District Court for the Eastern District of Michigan in *Ratte v. Corrigan*, 989 F.Supp.2d 550 (E.D. Mich. 2013). In *Ratte*, plaintiffs sued based on, among other things, a family court judge's practice of pre-signing orders allowing a state agency to remove children from their parents' custody. The practice essentially outsourced the family court's judicial function

1 to the agency, who could fill in the order with the facts of any given case and use the
2 pre-signed order to separate a child from his or her family. The court found that the
3 practice "preceded any adjudication" and that "[n]o judicial act occurred until the
4 probation officer filled in the pre-signed paper with case specific information." *Id.* at 560.
5 The court concluded that the family court judge's actions were administrative in nature
6 and not subject to immunity. *Id.* at 560-61.

In this case, however, the allegations clearly state that the decision about which agencies and counselors will fulfill RMC's sentencing requirements was clearly made: 1) in the context of actual criminal proceedings before the court; 2) as part of a sentencing determination; and 3) on at least one occasion from the bench during a RMC DUI proceeding. (ECF No. 1 ¶¶ 22, 35, 40.) The conduct challenged here did not result from RMC's decision, as an organization, not to utilize Finfer or Ability Counseling's services, but instead involved individual RMC judges' decisions to determine that the defendant in a given case would not receive any credit for counseling sessions with Finfer or Ability Counseling. (ECF No. ¶ 40.) The conduct here thus differs from *Ratte* in that it is alleged to have occurred during actual court proceedings and enacted by specific judges presiding over ongoing cases. In terms of the factors identified by the Ninth Circuit, the allegations center on sentencing (a normal judicial function), based on decisions made by RMC judges (either on the bench or in chambers), and which came to light during cases pending before RMC.

Finfer's case, though perhaps unique, still clearly falls within the category of judicial functions which are protected by immunity. Therefore, even accepting Finfer's allegations as true, his requested relief is barred.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

For the reasons discussed above, Finfer's requested relief is barred by judicial immunity and subject to abstention.

It is therefore ordered that Defendant's Motion to Dismiss (ECF No. 10) is granted. Plaintiff's Complaint is dismissed without prejudice.

It is further ordered that Plaintiff's motion for preliminary injunction (ECF No. 27) is denied as moot.

The Clerk is ordered to close this case.

DATED THIS 8th day of June 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE